UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD W. TOMPKINS,<br>Plaintifff, | :<br>:<br>: |
| v. | :     3:10-cv-01169-WWE |
| DAVID GULICK,<br>Defendant. | :<br>:<br>: |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Ronald Tompkins filed this action against defendant David Gulick alleging violation of the First, Fourth, Ninth, and Fourteenth Amendments to the United States Constitution and intentional infliction of emotional distress in violation of Connecticut law. Plaintiff alleges that defendant, as a state prosecutor, abused his power as a public official by interfering with plaintiff's relationship with his wife and children and deprived plaintiff of substantive due process by interfering with the prosecution of plaintiff, who had been charged with domestic violence.

Defendant has moved for summary judgment on the ground that he is entitled to absolute immunity in his function as a prosecutor. For the following reasons, defendant's motion will be granted.

## BACKGROUND

Plaintiff is a police officer for the Waterbury Police Department who was married to Cheryl Tompkins before she filed for a divorce, which was finalized in June 2010. Defendant is an Assistant State's Attorney who began seeing Ms. Tompkins intimately in January or February of 2008, while she was still married to plaintiff. Plaintiff believes that defendant was "a factor" in his divorce.

On May 20, 2008, Ms. Tompkins went to the Waterbury Police Department and then to the Wolcott Police Department, where she filed a domestic abuse complaint against plaintiff. Based on her complaint, the Wolcott Police Department obtained a warrant charging plaintiff with disorderly conduct and threatening in the second degree. Plaintiff admits that, taking all of the claims made by Ms. Tompkins that formed the basis of the arrest warrant as true, there was probable cause for his arrest.

The warrant for plaintiff's first arrest clearly stated, as a condition of release on bond, "Avoid all contact with the alleged victim." Plaintiff was arrested a second time that same day, however, for violating the protective order after Ms. Tompkins' colleagues reported that plaintiff had called her workplace asking to speak with her. Plaintiff maintains that he wished only to speak with one of his wife's co-workers.

Plaintiff's bond for the second arrest was initially set at $10,000. When plaintiff asked to make a phone call because he could post the bond, the Deputy Chief of the Wolcott Police Department raised the bond to $25,000, and when plaintiff stated that he could post that amount for bond, plaintiff claims that the Deputy raised it again to $50,000.

Plaintiff suspects that his bond was raised as a personal favor for defendant because defendant is a friend, neighbor, and colleague of the Deputy Chief's son. Defendant asserts that he never spoke to anyone at the Wolcott Police department about plaintiff's arrests.

Despite phone records indicating that defendant was in contact with Ms. Tompkins in the days leading up to plaintiff's arrest, defendant contends that he had no knowledge that Ms. Tompkins was in contact with either the Waterbury Police Department or the Wolcott Police Department.

Plaintiff alleges that defendant telephoned him after his arrest and instructed him to avoid legal counsel because defendant and his friend Assistant State's Attorney Therkildsen would handle everything. Defendant denies calling plaintiff.

Plaintiff asserts that defendant was in the courtroom every day that plaintiff's case was being heard, but defendant maintains that he was only there on a few occasions, and only because he was in the process of handling a number of unrelated cases.

Plaintiff contends that he was forced to take a plea deal and to participate in a pretrial diversionary program because of defendant's involvement in his case, and further argues that, if defendant did not have Prosecutor Therkildsen as his "spokesperson" in the courtroom, plaintiff would have taken his cases to trial. Nevertheless, Prosecutor Therkildsen was not the prosecutor who offered plaintiff the plea deal that he accepted, and plaintiff admits that he had the final say as to whether to accept the disposition of his criminal charges.

Plaintiff was represented by counsel throughout the criminal case against him, and the criminal charges were ultimately dismissed upon his successful completion of a one-year family violence program.

Plaintiff alleges and defendant denies that defendant personally approached plaintiff outside the courthouse and told him he had made a bad mistake and he was going to jail.

Although plaintiff admits that there is no direct evidence demonstrating that defendant was involved in plaintiff's arrest or prosecution, plaintiff argues that the nature of defendant's relationship with plaintiff's then estranged wife is such that defendant's denial of involvement lacks credibility. Plaintiff contends that the circumstantial evidence of defendant's relationship to his own office, which prosecuted plaintiff, his close personal relationships with the prosecutor

3

who handled the prosecution and the Deputy Police Chief who made the arrest and set the bond, and his intimate relationship with the woman who made the accusations against the plaintiff, are more than sufficient to permit a jury to infer that defendant participated in both the preparation of the warrant application that led to plaintiff's arrest and the orchestration of plaintiff's prosecution. Plaintiff alleges that defendant was acting at all times under color of law.

## DISCUSSION

A motion for summary judgment must be granted if the pleadings, discovery materials before the court and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 24. The mere existence of a scintilla of evidence in support of the nonmoving party's position is insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir.

2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

**Prosecutorial Immunity**

Prosecutors are entitled to absolute immunity when they engage in activities "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976). Whether an action is prosecutorial is determined by the nature of the function performed, not the identity of the actor. Kent v. Cardone, 404 Fed. Appx. 540, 542 (2d Cir. 2011). Similarly, the existence of absolute immunity depends on the nature of the function performed, not the method of performance. See Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005) ("A prosecutor is ... entitled to absolute immunity despite allegations of his 'knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information.' Although such conduct would be 'reprehensible,' it does not make the prosecutor amenable to a civil suit for damages."). In addition to protecting the performance of tasks as an advocate in the conduct of prosecution, absolute immunity extends to prevent suit against prosecutors based on procurement of an arrest warrant. Barr v. Abrams, 810 F.2d 358, 362 (2d Cir. 1987).

Here, plaintiff contends that the circumstantial evidence of defendant's position as a prosecutor, his close relationship with the prosecutor who handled the case and the Deputy Police

Chief who made the arrest and set the bond, and his long-term intimate relationship with the complaining party constitute sufficient circumstantial evidence to persuade a jury that defendant helped orchestrate the arrest and prosecution of plaintiff. Nevertheless, "[p]laintiff's claims against [defendant], which encompass activities involving the initiation and pursuit of prosecution, are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality." Peay v. Ajello, 470 F.3d 65, 68 (2d Cir. 2006). Furthermore, plaintiff derives no benefit from alleging a conspiracy. Hill v. City of New York, 45 F.3d 653 n. 2 (2d Cir. 1995).

Plaintiff claims that he was deprived of his right to family association through defendant's malicious prosecution of him, but virtually all criminal prosecution could be characterized as interfering with a defendant's right to family association. More importantly, plaintiff has failed to demonstrate how defendant's alleged actions could reasonably be viewed as falling outside the scope of activities intimately associated with the judicial phase of the criminal process. As defendant has absolute immunity for his performance of tasks as an advocate in the conduct of prosecution, he cannot be held liable to plaintiff for allegedly orchestrating plaintiff's prosecution, regardless of genuine misconduct. Indeed, the Supreme Court has stated:

> The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to s 1983 liability. Various post-trial procedures are available to determine whether an accused has received a fair trial. These procedures include the remedial powers of the trial judge, appellate review, and state and federal post-conviction collateral remedies. In all of these the attention of the reviewing judge or tribunal is focused primarily on whether there was a fair trial under law. This focus should not be blurred by even the subconscious knowledge that a post-trial decision in favor of the accused might result in the prosecutor's being called upon to respond in damages for his error or mistaken judgment. . . .
>
> To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest

> action deprives him of liberty. But the alternative of qualifying a prosecutor's immunity would disserve the broader public interest. It would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system.

Imbler v. Pachtman, 424 U.S. 409, 427-28 (1976). Accordingly, as plaintiff's claim is limited to defendant's malicious prosecution of him, summary judgment in defendant's favor is warranted.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

Dated this 22nd day of March, 2013, at Bridgeport, Connecticut.

/s/ Warren W. Eginton, SUSDJ
_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE